the fact and we appreciate your sharing, Your Honor. Thank you. Judge Loken, Judge Erickson, Judge Kovas, good morning. My name is Stephen R. Morrison and I represent Casey Crow Ghost. There's no question in this case that Ms. Archambault met with a very violent end. There's no question that my client killed her with a gunshot to the back of the head. He fled. He tried to cover up the scene. Once he was finally apprehended, he made inconsistent statements to the police. This is all clear. What's at issue in this case and I think covers all four of the issues I argued in my brief is the question of my client's mens rea. Of course, the government argued premeditated intentional murder. We challenged that with the sufficiency of the evidence claim, but what I think the real question is, is what a reasonable juror, given the evidence, could have found? This goes squarely to jury instructions, of course. Now, the district court provided a jury instruction on premeditated murder, as it should have. The district court provided jury instructions on voluntary manslaughter, as it should have, and self-defense, as it should have. What it did not do is provide jury instructions on imperfect self-defense and involuntary manslaughter. You know, I'm having a hard time how it fits into involuntary manslaughter. If we were standing here and someone had made an argument that this was a voluntary manslaughter case and there should have been an instruction and that lesser included ought to be there, I could understand that, but I keep reading involuntary manslaughter statute and I keep looking at the language, and I'm saying, you know, unlawful conduct not amounting to a felony. Well, you know, he at some point said that he had aimed and shot her in the back of the head. That doesn't seem to fit too well, and then you've got commission in an unlawful manner of an act without due caution and circumspection that might result in death. I mean, this looks more like, I get where you've got heat of passion and quarrel, which is actually what the guy was saying, so I don't understand why the trial lawyer never bothered to say, we ought to be talking voluntary manslaughter, and we get into this all or nothing thing. And so what's your best argument that this conduct fits into voluntary manslaughter? I'd hate to make the same mistake. Involuntary manslaughter. Or involuntary manslaughter, yes. Yes, and Judge Erickson, your characterization of involuntary manslaughter is certainly accurate. The way that I would formulate it, and I read from the case, was causing death with want and a reckless disregard for human life, or where the defendant knew his conduct could reasonably result in death. Given my client's, frankly, inconsistent statements, two interviews, and then his testimony at trial, the jury had the right to believe his testimony at trial, which was the gun just went off. And if that's the case, if these two people were arguing violently, or even not incredibly violently, and there was a gun involved, and my client was struggling with it, and she was struggling with it, and the gun just went off, that sounds like want and a reckless conduct to me. That sounds like the defendant engaged in conduct he knew could reasonably foreseeably result in death. I think you and Judge Erickson are discussing different issues, as I understood the briefs. Perhaps we are. Imperfect self-defense versus involuntary manslaughter. Imperfect self-defense, which wasn't instructed. Correct. But your quote from the Milk case on page 39 of your brief says, a defendant who proves imperfect self-defense does not have the mens rea for second degree murder, or first degree obviously, the defense does not exonerate the defendant of culpability, but justifies only a manslaughter conviction. So here, we have the voluntary manslaughter conviction. And so, if that was, how could it be prejudicial, plain air, to not give the alternative imperfect self-defense instruction? And then we get to the question of whether there was any sufficient, of the preserved involuntary manslaughter. But I read them as you are presenting two different issues today. Well, we are presenting two jury instructions that should have been given, but were not. No, no. I'm saying, I'm saying it, if you give a voluntary manslaughter instruction, then the argument, the defendant can argue the substance of imperfect self-defense. Well, I suppose that's possible. Of course, I don't. That's what, you know, I've never heard of this. I didn't try criminal cases, I've never heard of imperfect self-defense. You know, it either is or it isn't. And so, I'm reading from the case you rely on. It's quite an odd theory, Your Honor. I've been practicing criminal defense for quite some time, and I tend to agree with you. It's either self-defense or it's not. Now, I really don't want to hang my hat. But if the doctrine exists, as Milk seems to recognize, then it's another way of instructing on voluntary manslaughter. On heat of passion? I mean, the jury didn't, the jury convicted him of murder, and therefore rejecting the voluntary manslaughter alternative. I think that... So, this can't be plain error, can it? Well, I think it can be. The heat of passion voluntary manslaughter theory is different than imperfect self-defense because with voluntary manslaughter, you know what you're doing, you're acting out of an upswell of emotion, that's heat of passion, whereas, as you quote on page 39 of my brief, imperfect self-defense arises from a defendant unreasonably but truly believing that deadly force was necessary. And that goes... It's fine. It is willful action. It is negligence. I mean, it's... Well, I would say it is negligence because you're acting unreasonably, but... No. Well, but you're... Put that aside. You're willful. Sure. You're intending what you're doing. Yes. You just have an unreasonable perception that you have a right to do it. That's fair to say, Your Honor. Absolutely. And I think that the evidence in this case supports a jury instruction to that point. Now... What I'm saying is that when you give a voluntary manslaughter instruction, and particularly when imperfect self-defense could be argued on the facts within the purview of a voluntary... Therefore, you should find the defendant guilty of no more than voluntary manslaughter because of these imperfect self-defense facts. But imperfect self-defense was never given to the jury as an instruction. And voluntary... Okay. But your argument is it had to be sui sponte given to the jury. Well... And what I'm saying is the court did. How can it sui... Why does it sui sponte have to step on the same roach twice? I think voluntary manslaughter in the Eighth Circuit goes to heat of passion, which is not unreasonably believing you have to defend yourself. I think those are two different theories. But I certainly don't want to hang my hat on a jury instruction that we didn't request. I'm just saying. Then we get... That's my problem with imperfect self-defense because it isn't part of your involuntary manslaughter theory because it isn't an involuntary manslaughter... Correct. I mean, your issue for involuntary manslaughter is different than imperfect. Correct. Because imperfect is not negligent. It's unreasonable intentional. Yes. That's absolutely true. Absolutely true. So back to the... Back to the judge... No. Back to involuntary. Why is this conceivably... Why is it conceivably involuntary? ...worse than willful intentional conduct? Well, because willful intentional conduct means I'm going out of my way to do something that I want to do, whereas involuntary manslaughter says, hey, I'm doing something, and if it turns out to cause a death, oh well. But his test... Of course, he's got the two interviews in the trial, and even taking the... ...doing something favorably to the defendant for purposes of instructing. That testimony is, yeah, I meant to kill her because she was about to kill me. Well, the testimony at trial was the gun just went off. The gun just went off. Now, can you believe my client... ...in the context of a physical assault, perhaps. Absolutely. Within the context of a violent assault and death. Now, can you believe my client? Maybe, maybe not. But that's not for this court to judge. The question is whether the jury, given the evidence, could have reasonably concluded imperfect self-defense or involuntary manslaughter. Now, the government, I would imagine, is going to come up and say, well, you can't believe Casey Krogost. He made all these inconsistent statements. But we all know that when the government tries these very complex drug conspiracies, they always put witnesses on the stand who have initially lied to law enforcement agents. They change their testimony for trial. And the argument to the jury is, ladies and gentlemen of the jury, you are the judges of credibility. You can decide who to believe and to what extent. I would only ask that Casey Krogost be extended the same possibility. Well, the jury was unable to extend him that courtesy that we extend to informants in drug conspiracy cases that the government puts on because they didn't get the jury instructions that the evidence permitted. Now, I have wanted to reserve four minutes of my time, and I see that's up. Can I ask just one very quick question? Yes. If I look at the closing argument, it looks like the lawyer who tried the case for the reasonableness and did, in fact, argue how that went to the necessary intent, right? And the harm isn't then that he was deprived the opportunity to present his defense or argue his defense that you're claiming. What the harm is is that the failure to instruct that that may be an imperfect self-defense defense is what you lost here. Your recollection, I believe, is correct that he argued self-defense, which was an instruction given. But Judge Loken put it well. What the jury had was an all-or-nothing question. What I believe is the evidence permitted the possibility of the jury finding something in between. And I'll reserve my time if I may. Mr. Cook. Good morning. May it please the Court, Counsel. My name is Cameron Cook, and I represent the government in this appeal from the District of South Dakota. I'm here to answer any questions and to explain why the District Court got this case right. First issue and address is the proof of premeditation. This Court looks at three categories of evidence to decide whether there was sufficient evidence of premeditation, motive, planning activity. So you're arguing an issue that wasn't argued by opposing counsel, therefore opening it for rebuttal. That's fine, Your Honor. I think it's important to understand the other issues in the case. Do you think it's properly fully briefed? Your Honor, then I'll move on if the Court would like me to. No, this is your call. But I think when counsel for appellee chooses to argue a fully briefed issue that wasn't raised by counsel for appellant, that is normally a serious mistake. Point taken, Your Honor. I'll move on. And I think I'll wrap up what I wanted to say in terms of the jury instruction issues, which is really the heart of it. All or nothing is what you said yourself, Judge. That's what the defense came down to in this case. So just to be clear, there were two interviews of the defendant, and then he testified at trial. The first interview of the defendant, he told law enforcement essentially the gun went off. What had happened was there was this alleged fight. The victim brandished a gun at him. He struggled with her for possession of it, and then the gun went off. In other words, not intentionally pulled a trigger. And then he claimed the victim dropped, and then he left, never went back. In the second interview with law enforcement, he explicitly said that he aimed and shot her. And then he goes on to describe the last 30 seconds of Ms. Harshembo's life, where she's injured, unarmed, leaving the apartment. He drags her back inside, holds her, picks the gun up off the kitchen counter, gives her a push, and then shoots her. So that testimony shows the execution aspect. Although he says it was done in the heat of passion, so he gives the label of voluntary manslaughter to it. Although what he describes is really an execution of the government's view. And then at trial, he runs away from that second interview and goes back to the first interview with law enforcement, and he goes back to the gun went off theory, except it changed, and he said that he had gotten the gun and was trying to leave. And as it was halfway out the door, the victim pulled on his hair, allegedly. He spun around, and once again the gun went off, and then he left. So this assertion that there should have been an involuntary manslaughter instruction, I think is incorrect. I would point the court to the Lassley case. This is from the A Circuit in 2016, and there the defendant was convicted of murder, and he had attacked the victim with a machete. And this court upheld the district court's refusal to give an involuntary manslaughter. What case was that? Lassley, L-A-S-L-E-Y. Okay. I misheard. And that case, I think, really sums up why involuntary manslaughter instruction was not appropriate in this case, Your Honor. There was simply no evidence, as the district court noted, that the defendant acted with criminal negligence, a state of mind, or mens rea. The defense at trial was either that the gun went off due to the victim's aggression, or it was he had a passion and he committed voluntary manslaughter but not murder. Defense counsel didn't really make that argument for the jury, I think relying mostly on the gun went off and it was self-defense. I would guess that the defense would ask exactly how is Lassley similar to this case, because on the facts itself, that's a young man slamming a machete into his parents repeatedly. And, you know, which, that gets to be a slightly different, well, it's more egregious facts than what they are arguing as sort of option three on the three statements that the jury could have believed. The facts are a little different, but the reasoning, I think, is the same. And there, the Eighth Circuit said that there was no evidence that the defendant had accidentally hit the parents. That's why there wasn't an instruction given. So, likewise, in this case, if the defendant testified at trial that he thought the gun was unloaded and he was just trying to scare Ms. Archambault because he was, you know, being aggressive towards him and, you know, lo and behold, it was loaded and he accidentally killed her, that would have warranted an involuntary manslaughter instruction. But there was nothing like that. Or, you know, playing Russian roulette, you can imagine different scenarios where criminal negligence would come into play, but there was nothing supporting that in this case. So, I think the district court properly denied that involuntary manslaughter instruction. Regarding the key, the imperfect self-defense, I think the courts summarized the government's position. The defense got a voluntary manslaughter instruction. The jury could have settled for something less than perfect self-defense and still convicted him of the lesser charge of murder. And, again, there really is no evidence of the different ways you could prove imperfect self-defense under the Milk case. It could be using unreasonable deadly force in response to non-deadly force. So, I would imagine that as if the defendant was about to be slapped and then shot her in response to what's a very minor injury, he elevated to deadly force. There was no evidence of that in the trial, because, again, the gun either just went off or he intentionally shot her when she was unarmed and he was standing behind her. And then the other situation in the Milk case for that gets back to criminal negligence, which, again, there's been no evidence of that. Your Honor, I'm going to take your advice and not address an issue that hasn't been raised, which was the 404B claim. If the court has any other questions of me, I'm happy to answer those. But if not, I would just rest on our briefs in this case and our argument and ask the court to affirm this conviction. Thank you. Am I right on the involuntary manslaughter, I've got to note that the defendant proposed, I guess our model instruction, 6.18.1112B. He did propose it, Your Honor, and the district court denied it, saying there was no evidence of any of that. Okay, thank you. Thank you. For rebuttal? Well, the government says there's no evidence of any of these lesser offenses. I'm at a loss as to how the record shows there's no evidence. Mr. Cook specifically mentioned that there was no evidence, for example, if the victim were swapping the defendant, well, then we might have an involuntary manslaughter case. Well, there was evidence that the victim was swapping and hitting the defendant. I think he was really referring to that he thought the gun was unloaded. Well, that's a hypothetical, and that's fine. If your gun is unloaded, you're not going to shoot anybody. But the fact is the gun was loaded. And we have to deal with that fact, and we have to deal with what could a reasonable jury have determined regarding my client's mens rea. If we're talking involuntary manslaughter, wanton or reckless conduct, or sorry, disregard for human life, getting into a fight with somebody and dealing with a gun sounds a lot like wanton or reckless disregard for human life. Whether he started it, whether she started it, it's irrelevant. It's wanton or reckless disregard. If you're reaching for a gun in a fight and you believe truthfully that the gun is loaded, that's conduct that could reasonably foreseeably result in death. We don't have to determine what Mr. Krogost's actual mens rea is. All we have to determine is what the evidence was, and from that, what a reasonable jury could have concluded. Now, Mr. Cook mentions that my client wanted an all or nothing set of jury instructions. Well, that's patently untrue. He requested an involuntary manslaughter instruction. He did not want an all or nothing. This was a tragic case. This was a victim who met a violent end, and my client killed her. Did he do the right thing in the moment by covering up the scene, by fleeing? No. But this is a guy who has no criminal history. He did a horrible act, and he did what some human beings would do. He freaked out. And when the cops caught him, he did what a lot of people do. He made inconsistent statements. That's what a lot of government witnesses do when they're caught up in drug conspiracies. That's what my client did. And it's not for us to judge whether he was telling the truth in the first interview, the second interview, or at trial. That's for the jury to decide. And they have to have the proper jury instructions to allow them to make correct determination of culpability. And so we would ask that you vacate my client's conviction and remand for a  Thank you. Thank you.